

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

BOUNTY-FULL
ENTERTAINMENT, INC.,
AS GENERAL PARTNER
OF ABH PARTNERS, LTD.;
ANDREW MEARS; AND
ROD MITCHELL,

     Plaintiffs,

VS.

FOREVER BLUE
ENTERTAINMENT GROUP,
INC.; TRADEWINDS
TELEVISION LLC; ACTION
MEDIA GROUP; MANATT,
PHELPS, PHILLIPS, A
LAW PARTNERSHIP
INCLUDING PROFESSIONAL
CORPORATION; AND JILL
M. PIETRINI, INDIVIDUALLY,

     Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

**APR 0 2 1996**

MICHAEL N. MILBY Clerk

CIVIL ACTION NO. H-96-0196

---

## ORDER DENYING MOTIONS TO DISMISS

This is an action for the state law claims of libel, defamation, and

tortious interference with existing and prospective business relations brought

by the plaintiffs, Bounty-Full Entertainment, Inc., as General Partner of ABH

Partners, Ltd. ("Bounty-Full"), Andrew Mears, and Rod Mitchell against the defendants, Forever Blue Entertainment Group, Inc. ("Forever Blue"), Tradewinds Television LLC ("Tradewinds"), Action Media Group ("AMG"), Manatt, Phelps, Phillips, a Law Partnership including Professional Corporations ("the Manatt Firm"), and, Jill M. Pietrini, Individually.  This is also an action based upon federal law for a declaratory judgment that the plaintiffs did not infringe upon any copyright or trademark owned by the defendants, or commit any act of unfair competition.

Before the Court are the following motions: the defendants Tradewinds' and AMG's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction; their Rule 12(b)(3) motion to dismiss for lack of proper venue, or, in the alternative, to transfer venue to the Central District of California, Western Division; and, their Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  The Court, having considered the motions, the responses, the pleadings on file, and the applicable law, holds that the defendants' 12(b)(2) motion to dismiss should be denied, that the defendants' 12(b)(3) motion to dismiss should be denied, that the defendants' motion to transfer venue should be denied, and that the defendants' 12(b)(6) motion to dismiss should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, Bounty-Full, and its owners and officers, Andrew Mears and Rod Mitchell, claim to have conceived of a reality-based television series featuring actual film footage and reenactments of captures of bail violators by private bail enforcement agents in the United States.

The plaintiffs contend that they were ready to commence the broadcasting of this new television series, called "American Bounty Hunters," through the United Paramount Network ("UPN") in March of 1996. However, upon gaining some knowledge of this fact, the defendants Tradewinds and AMG had their attorney Jill Pietrini with the Manatt Firm publish two letters, one of which was directed to UPN's President Michael Sullivan and the other to a Debra Simon, who appears to be an independent contractor working for Bounty-Full.[1]

These letters allege that: (1) Bounty-Full's use of the name "American Bounty Hunters" violates a trademark held by Forever Blue, and (2) Bounty-Full's television show concept violates a copyright also held by Forever Blue. These letters continue on indicating that the trademark and copyright were subsequently licensed to Tradewinds, and that AMG was to assist

_____

[1] The parties dispute the nature of Simon's association with Bounty-Full.

3

Tradewinds in producing a substantially similar television show to be called "Bounty Hunters." The plaintiffs assert that upon receipt of this letter, UPN became somewhat less enthusiastic about airing the plaintiffs' competing program. At this time, though, UPN is not a party to this lawsuit.

The merits of these claims are not before the Court this day. Rather, the thrust of the defendants' motions goes solely to the circumstances surrounding the publishing of the letter to Simon who was and, apparently remains, a Houston resident. These letters were published on or about January 19, 1996, and resulted in swift legal action on both sides.

On January 22, 1996, the plaintiffs filed suit against these defendants in the 11th Judicial District Court of Harris County, Texas. This Court gained subject matter jurisdiction of the matter pursuant to a Notice of Removal filed the next day. On January 24, 1996, the plaintiffs filed their Amended Complaint, and, on January 29, 1996, Tradewinds and AMG filed their motions to dismiss.

## CONTENTIONS OF THE PARTIES

The plaintiffs allege that proper federal subject matter jurisdiction exists for both their federal and state claims. They also allege that valid personal jurisdiction over all of the defendants exists based upon (1) the act

4

of sending the January 19, 1996, letter to Houston resident Simon, whom they contend was working at that time on a contract basis for Bounty-Full as a television producer, and (2) the production of the plaintiffs' television show in Houston. The plaintiffs assert the same bases for maintaining venue in the Southern District of Texas, Houston Division.

The defendants Tradewinds' and AMG's Rule 12(b)(2) motion to dismiss contests the plaintiffs' bases for personal jurisdiction, stating that the constitutional requirements of due process mandate the suit's dismissal. In this regard, they contend (and the plaintiffs do not appear to dispute) that every one of the defendants resides in California. These same defendants' Rule 12(b)(3) motion to dismiss asserts that venue in the Southern District of Texas is improper, because a substantial part of the events or omissions giving rise to the plaintiffs' claims did not occur in this judicial district. Finally, the defendants' Rule 12(b)(6) motion to dismiss contends that the plaintiffs' complaint states no claim upon which this Court may grant relief, in that the two letters sent by Pietrini were absolutely privileged communications within the confines of a judicial proceeding.

5

## DISCUSSION AND AUTHORITY

### Subject Matter Jurisdiction

Although the defendants' motions to dismiss do not appear to challenge subject matter jurisdiction, the Court determines that a discussion of the bases for the exercise of judicial power is necessary, given that the pleadings appear to reflect some confusion on this matter. Upon reviewing the pleadings and affidavits on file, the Court determines that proper diversity subject matter jurisdiction exists for all of the plaintiffs' state law claims. Complete diversity appears to exist, and these state law claims appear to seek money damages in excess of the requisite jurisdictional amount. Accordingly, this Court properly sits in diversity over the state law claims for libel, defamation, and tortious interference with existing and prospective business relations. 28 U.S.C. § 1332 (1996).

In addition, this Court has proper federal question subject matter jurisdiction of the plaintiffs' requests for relief pursuant to the Federal Declaratory Judgment Act. 28 U.S.C. § 2201 (1996). Pursuant to the claims joinder provisions of the Federal Rules of Civil Procedure, this Court may hear both claims simultaneously. Fed. R. Civ. P. 18(a).

ClickPDF - www.fastio.com

## Personal Jurisdiction

Turning to the arguments raised in the defendants' Rule 12(b)(2) motion to dismiss, this Court first recognizes that in ruling on such a motion, the allegations of the complaint, except insofar as controverted by the defendants' affidavit, must be taken as true. See Black v. Acme Markets, Inc., 564 F.2d 681, 683 n.3 (5th Cir. 1977) (citing to C. Wright and A. Miller, Federal Practice and Procedure § 1363, at 654 (1969)). Furthermore, in the absence of an evidentiary hearing on the matter, as in the case at bar, a plaintiff must demonstrate only a prima facie showing for personal jurisdiction. See Irving v. Owens-Corning Fiberglas Corp., 864 F.2d 383, 384-85 (5th Cir. 1989), cert. denied, 493 U.S. 823 (1989). The Court turns to a consideration of the claims and how personal jurisdiction is established.

The State Law Claims

To properly establish personal jurisdiction over a defendant, a litigant suing in diversity must satisfy the same test as would a litigant suing in the particular state forum. See Wilson v. Belin, 20 F.3d 644, 646 (5th Cir. 1994), cert. denied, _____ U.S. _____, 115 S.Ct. 322 (1994). This test contains two parts. First, the litigant must comply with the requirements of the forum state's long-arm statute. Second, he must meet the Fourteenth Amendment

"due process" requirements. See Irving, 864 F.2d at 385. For claims based upon Texas law, these two steps collapse into one, because the Texas Supreme Court has held that the Texas long-arm service statute, Tex. Civ. Prac. & Rem. Code § 17.042 (Vernon 1986), "reaches as far as the federal constitutional requirements of due process will permit." See id. (quoting from Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex. 1985)).

The "due process" clause permits a district court to exercise personal jurisdiction over a nonresident defendant when the nonresident has sufficient "minimum contacts" with the forum, and the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The minimum contacts must arise from actions by which the nonresident defendant "purposefully avails [himself] . . . of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also Hanson v. Denckla, 357 U.S. 235, 253 (1958).

A district court may exercise *specific* personal jurisdiction over civil actions within the forum state that are related to the defendant's contacts with the state, provided the contacts sprang from the defendant's purposeful

8

conduct rather than from the plaintiff's unilateral activities.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980) and, Bearry v. Beech Aircraft Corp., 818 F.2d 370, 375 (5th Cir. 1987).  *General* personal jurisdiction, although not contended by the plaintiffs to exist on these facts, may be asserted when the level of "minimum contacts" arises to the level of being "continuous and systematic."  Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 413-14 (1984).  When *general* personal jurisdiction is determined to exist, a plaintiff need not demonstrate that a civil action is related to a particular defendant's contacts with the forum state, as a plaintiff must do when asserting the existence of *specific* personal jurisdiction.

In Texas, the number of contacts with the forum state is not, alone, determinative of whether specific personal jurisdiction exists.  See Ham v. La Cienega, 4 F.3d 413, 415 (5th Cir. 1993); and, Hydrokinetics v. Alaska Mechanical, Inc., 700 F.2d 1026, 1028 (5th Cir. 1983), cert. denied, 466 U.S. 962 (1984).  If the contact with the forum "resulted from the defendant's conduct and created a substantial connection with the forum state, even a single act can support [specific personal] jurisdiction."  Id.; see also McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957).

A recent state court of appeals held that one single telephone call

9

constituted sufficient "minimum contacts" to subject a nonresident defendant to personal jurisdiction in the state of Texas. E.g., Memorial Hosp. System v. Fisher Ins. Agency, 835 S.W.2d 645, 651 (Tex. App.--Houston [14th Dist.] 1992, writ denied). The court reasoned that the plaintiff's chief allegation in the case, that a telephone call made to a Houston hospital contained actionable misrepresentations, was sufficient for purposes of establishing specific personal jurisdiction.

In a similar ruling, the Fifth Circuit Court of Appeals held that a mere telephone call provided enough "minimum contacts" to justify the imposition of personal jurisdiction over the nonresident placing the call. E.g., Brown v. Flowers Indus., Inc., 688 F.2d 328, 332-34 (5th Cir. 1982), cert. denied, 460 U.S. 1023 (1983).[2]  Further precedent reflecting that a single contact may provide constitutionally sufficient "minimum contacts" is McGee v. International Life Ins. Co., 355 U.S. 220 (1957). There, the Court ruled that the mailing of an insurance contract from Arizona to California created sufficient "minimum contacts" to subject a nonresident entity to specific

---

[2]  Although this decision concerned a diversity action originating in Mississippi under that state's law, this Court notes that the Fourteenth Amendment constitutional issue raised with regard to personal jurisdiction does not vary from state to state.

10

personal jurisdiction in California.  Id. at 223.

The determination that sufficient "minimum contacts" exist, though, is not the end of a court's inquiry.  Rather, a court must then decide whether entertaining the suit against the nonresident would offend "traditional notions of fair play and substantial justice."  Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 105 (1987).  That is, if "minimum contacts" are shown to exist, a court still must decline to exercise jurisdiction over the defendant if prosecution of the action in the forum state would be "unreasonable and unfair."  Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990).

Factors that a court may consider in conducting such an analysis include (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  See Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 232-33 (Tex. 1991).[3]

---

[3]   There the Texas Supreme Court held that to sanction the prosecution of a subrogation suit between two English insurance companies, each of which had absolutely no connection with the United States aside

11

Applying the law to the facts of this case leaves no doubt that specific personal jurisdiction exists for the state law claims asserted by the plaintiffs. Without passing on the underlying merits of the plaintiffs' claims, this Court notes that the state law claims are based at least in part upon the publication of the January 19, 1996, letter to Simon, who resides in Texas. Thus, the sending of the letter constitutes sufficient "minimum contacts" for purposes of specific personal jurisdiction. See Memorial Hospital, 835 S.W.2d at 651; Brown, 688 F.2d at 332-34; and, McGee, 355 U.S. at 223.

Moreover, the exercise of personal jurisdiction over these defendants for these state law claims will not be unreasonable or unfair. Certainly Simon, a Houston resident, will be a key witness in ascertaining whether the defendants' conduct was in fact tortious. Also, the state of Texas clearly has a strong interest in protecting its citizens from torts committed in the state of Texas by nonresident entities or persons. For these reasons, this Court holds that the imposition of specific personal jurisdiction against these defendants for these state law claims does not offend "traditional notions of fair play and substantial justice."

---

from the underlying matter in subrogation, would offend "traditional notions of fair play and substantial justice."

12

The Plaintiffs' Requests for Relief Pursuant to the Federal Declaratory
Judgment Act

Because the amount and degree of "minimum contacts" existing
in this case are sufficient only for *specific* personal jurisdiction, and thus do not
rise to the level of *general* personal jurisdiction, the plaintiffs must demonstrate
an independent basis for maintaining specific personal jurisdiction for their
requested declaratory judgments.

As with the Texas state law claims, amenability to service of
process and the exercise of personal jurisdiction are linked together in the
federal courts when a plaintiff asserts claims based upon federal law.   The
Supreme Court clarified the relationship between these two principles in <u>Omni
Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.</u>, 484 U.S. 97 (1987).  According
to the Court,

> ". . . before a court may exercise personal jurisdiction over a
> defendant, there must be more than notice to the defendant and
> a constitutionally sufficient relationship between the defendant and
> the forum.   There also must be a basis for the defendant's
> amenability to service of summons.  Absent consent, this means
> there must be authorization for service of summons on the
> defendant."

<u>Id.</u> at 104.  The court goes on to say that ". . . under Rule 4(e) [of the Federal
Rules of Civil Procedure], a federal court normally looks either to a federal
statute or to the long-arm statute of the State in which it sits to determine

13

whether a defendant is amenable to service . . .." <u>Id.</u> at 105.

The plaintiffs have not referred us to any federal law basis that provides for the defendants' amenability to service independent of Rule 4(e), and this Court is aware of no such basis. Accordingly, as with the previously discussed state law claims, in order to prosecute these federal claims, the plaintiffs must first demonstrate the ability to serve these defendants under the Texas long-arm statute, and then must show that personal jurisdiction may be maintained consistent with the constitutional requirements of "due process."

As noted earlier, these two requirements collapse into one, because the Texas courts have consistently held that its long-arm statute reaches as far as "due process" will allow. <u>E.g.</u>, <u>Wilson</u>, 20 F.3d at 646. Accordingly, the inquiry on personal jurisdiction centers on whether the matters to be litigated--the declaratory judgments--relate sufficiently to the sole contact that the defendants are alleged to have had with Texas, i.e., the January 19, 1996, letter mailed to Simon. <u>See</u> <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297-98 (1980); and, <u>Bearry</u>, 818 F.2d at 375.

The requested declaratory judgments are to determine that (1) the plaintiffs have not infringed on any trademark or patent held by the defendants, and (2) the plaintiffs have not engaged in any act of unfair

14

competition. The plaintiffs seek these declarations from the Court, in large part, as a legal defense to the allegations raised by the January 19, 1996, letter to Simon. According to the plaintiffs, the sending of this letter furnishes the requisite "minimum contacts" to establish personal jurisdiction. This Court agrees.

By mailing the letter, the defendants have purposefully directed their activities at residents of the state of Texas, and the declaratory judgments address the alleged injuries that arose out of or related to those activities. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985).[4]

In addition, this Court determines that this assertion of personal jurisdiction over the defendants will not offend "traditional notions of fair play and substantial justice." The plaintiffs and Simon will surely be important witnesses in ascertaining whether this Court should grant the declaratory judgments. The state of Texas also has a strong interest in protecting its

---

[4] In support of the exercise of personal jurisdiction, the plaintiffs refer to several court decisions, all of which held that a declaratory judgment of non-infringement of a trademark or patent "arises" where the alleged infringer (in this case, the plaintiffs) is located. E.g., United States Aluminum Corp. v. Kawneer Co., Inc., 694 F.2d 193, 195-96 (9th Cir. 1982); Pennwalt Corp. v. Horton Co., 582 F. Supp. 438, 440 (E. D. Pa. 1984); and, Eastman Kodak Co. v. Studiengesellschaft Kohle mbH, 392 F. Supp. 1152, 1156 (D. Del. 1975). While these cases may be instructive, this Court is not convinced that they govern in matters regarding personal jurisdiction; rather, they appear to be resolving disputes on *venue*. Indeed, this Court relies upon these opinions in its ruling on venue.

Moreover, it is not relevant for personal jurisdiction purposes that defendants Tradewinds and AMG are marketing their TV show directly here in Houston because an action for a declaratory judgment for noninfringement does not arise out or relate to the marketing activity. Clearly, the marketing activity, by itself, is not sufficient for *general* personal jurisdiction.

15

CitiPDF - www.fastio.com

residents from nonresidents' claims of trademark and patent infringement. Accordingly, this Court holds that the plaintiffs have properly asserted bases for personal jurisdiction over the defendants, on both the state and the federal claims. The Court now turns to the venue issue.

## Venue

### Motion to Dismiss for Improper Venue

When moving to dismiss for lack of proper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, the defendant has the burden to demonstrate affirmatively that the plaintiff filed the lawsuit in an improper venue. See, e.g., Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982), cert. denied, 462 U.S. 1106 (1983) (citing to 1 J. Moore, Moore's Federal Practice and Procedure ¶ 0.140[1], at 1319-20 (2d ed. 1982)). That is, for this Court to grant this motion to dismiss, the defendants Tradewinds and AMG must show affirmatively that these plaintiffs could not have brought this suit in this judicial district.

Venue is proper in the Southern District of Texas, when "a substantial part of the events or omissions giving rise to the claim occurred in this district." 28 U.S.C. § 1391(a)(2) (1996). Restating the contention made in the 12(b)(2) motion to dismiss, the defendants argue once again that the

16

sending of the January 19, 1996, letter to Simon did not constitute any significant event in this lawsuit. Thus, they claim, no substantial part of the events or omissions giving rise to this claim occurred in this district. This Court disagrees. Regardless of whether this Court eventually holds that the plaintiff may recover under its asserted causes of action, this Court finds that the letter in question constitutes a substantial part of the events giving rise to this lawsuit. As noted in this Court's discussion of specific personal jurisdiction, the state law claims are based almost entirely upon the effect of that letter on a Houston Division resident, Debra Simon.

Likewise, the federal claims for declaratory relief require this Court to inquire as to whether the plaintiffs' conduct in creating the television program violated any copyright, trademark, or unfair competition laws. In this regard, this Court observes that most, if not all, of the plaintiffs' conduct allegedly violating any of these laws occurred in the Houston Division. Indeed, this judicial district and Division is the location where the plaintiffs aimed to film and produce episodes of their competing television program.

Significantly, when faced with venue challenges in declaratory judgment lawsuits regarding similar claims of "noninfringement" of copyrights,

17

trademarks, or unfair competition laws, other federal courts have held that these causes of action "arise" wherever the alleged infringer (in this case, the plaintiffs) is located.  E.g., United States Aluminum Corp. v. Kawneer Co., Inc., 694 F.2d 193, 195-96 (9th Cir. 1982); Pennwalt Corp. v. Horton Co., 582 F.Supp. 438, 440 (E.D. Pa. 1984); and, Eastman Kodak Co. v. Studiengesellschaft Koble mbH, 392 F.Supp. 1152, 1156 (D. Del. 1975).  While not constituting controlling precedent in this judicial district, the reasoning in these opinions appears persuasive.  As a result, this Court holds that venue may be maintained for the federal declaratory judgment actions in the Southern District of Texas, Houston Division.

Motion to Transfer Venue to the Central District of California

The defendants alternatively contend that venue, if found to be proper in this judicial district, should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a) (1996).  Once again, this Court disagrees and denies the motion to transfer.

The decision to transfer a pending case is committed to the sound discretion of the district court.  See Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).  The criteria weighed by a court in deciding a § 1404(a) motion include

18

the following factors:

(1)   the convenience of the parties;
(2)   the convenience of material witnesses;
(3)   the availability of process to compel the presence of unwilling witnesses;
(4)   the cost of obtaining the presence of witnesses;
(5)   the relative ease of access to sources of proof;
(6)   calendar congestion;
(7)   where the events in issue took place; and,
(8)   the interests of justice in general.

See State Street Capital Corp. v. Dente, 855 F.Supp. 192, 197 (S.D. Tex. 1994);

St. Cyr v. Greyhound Lines, Inc., 486 F.Supp. 724, 727 (E.D. N.Y. 1980); and,

Goodman v. Schmalz, 80 F.R.D. 296, 300-01 (E.D. N.Y. 1978).

Counterbalancing these considerations is the fact that, in a transfer

of venue analysis, a plaintiff's choice of forum is entitled to great deference.

See Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989), cert.

denied sub nom., 493 U.S. 935 (1989); and, Continental Airlines, Inc. v.

American Airlines, Inc. 805 F.Supp. 1392, 1396 (S.D. Tex. 1992). Also, a party

moving to transfer venue pursuant to § 1404(a) has the burden of

demonstrating why the forum should be changed. See Time, Inc. v. Manning,

366 F.2d 690, 698 (5th Cir. 1966).

To these ends, the defendants Tradewinds and AMG cite several

factors in favor of their position. They note that they, and their employees,

19

are all located in California, and again contend that none of the operative facts in this dispute occurred in Texas.   However, while the location of the defendants is a relevant factor to be considered in ruling on a motion to transfer, it is not the sole factor.   This Court has already found that many of the events giving rise to this lawsuit happened in Houston.   Debra Simon, clearly a material witness for the state law claims, is located in Houston.   In addition, Houston is home to many of the witnesses who will be testifying in the federal declaratory judgment claims, given that the declarations being sought are to ascertain whether the plaintiffs have engaged in infringing any copyrights or patents held by the defendants or engaged in any unfair trade practices.  Also, many of the relevant documents are located within this judicial district.

When considering all of these factors in light of the particular judicial test to be applied under § 1404(a), this Court cannot say that a transfer to the Western District of California would result in a greater convenience to all the parties.   Accordingly, the defendants' motion to transfer venue is denied.

## Privilege

The defendants Tradewinds and AMG also move that, pursuant to

Rule 12(b)(6), the plaintiffs' case must be dismissed for failure to state a claim upon which relief may be granted.  The rationale for this motion centers on the defendants' allegation that the January 19, 1996, letter sent to Debra Simon constituted a "demand letter" sent by an attorney to a party in full anticipation of future litigation.  Such a letter, the defendants maintain, is a privileged communication made within the context of a judicial proceeding and, thus, may not constitute a basis for any of the tort actions alleged by the plaintiffs.

This Court does not agree.  Bounty-Full included two sworn affidavits as exhibits to its response to the defendants' motion to dismiss, both of which raise serious doubt about the defendants' allegation that the letter sent to Debra Simon was a "demand letter."  The first sworn affidavit is from Debra Simon herself.  In this affidavit, Simon  stated that she was merely an independent television and film producer who was hired on a contract basis to work for Bounty-Full.  She further stated that she had never previously worked for Bounty-Full or for any of its principals.  The second affidavit is from Andrew Mears, in which he states that he, and not Debra Simon, is the President of Bounty-Full.

In light of the fact that the defendants did not contradict any of

21

the allegations made in these sworn affidavits, the Court must accept them as true for purposes of the defendants' 12(b)(6) motion to dismiss. Accordingly, the January 19, 1996, letter could not possibly have been a "demand letter," because it was neither sent to any of the plaintiffs nor to any of their attorneys. Instead, as far as the record reflects, the letter was merely standard business correspondence, to which no such privilege attaches.

As a result, this Court need not address at this time the privilege issues raised by the defendants' 12(b)(6) motion to dismiss. The Court does find, though, that all of the cases cited by the defendants in support of the motion to dismiss concern letters that were either sent after a legal proceeding had been instituted, or sent to potential future litigation defendants. Because the letter in question does not fit into either of these categories, the defendants' motion to dismiss must fail.

It is so ORDERED.

Signed this 1st day of April, 1996.

KENNETH M. HOYT
United States District Judge

22